## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| H.B. Fuller Company, a Minnesota Corporation, and Roanoke Companies Group, Inc. f/k/a SCB Sub, Inc., a Minnesota corporation, | Civil No. 08-295 (DWF/AJB) |

Plaintiffs,

v.

BRTT, Inc. f/k/a Roanoke Companies
Group, Inc., a Missouri corporation,
CBRTT, Inc. f/k/a/ Chicago Adhesive
Products Co., an Illinois corporation,
William J. Kyte, John H. Johntz, Jr.,
Richard F. Tripodi, and Thomas K. Jones,

Defendants.

**MEMORANDUM
OPINION AND ORDER**

---

Charles B. Rogers, Esq., Jason R. Asmus, Esq., Samuel L. Hanson, Esq., and Timothy G. Gelinske, Esq., Briggs & Morgan, P.A., counsel for Plaintiffs.

Edward B. Ruff, III, Esq., Mary H. Cronin, Esq., Michael P. Turiello, Esq., and Priya Krishnan Jesani, Esq., Pretzel & Stouffer Chartered; and Gerald H. Fornwald, Esq., Robert R. Weinstine, Esq., Tiffany A. Blofield, Esq., and William A. McNab, Esq., Winthrop & Weinstine, PA, counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court pursuant to a Motion to Remand brought by

Plaintiffs H.B. Fuller Co. ("H.B. Fuller") and Roanoke Companies Group, Inc.

("Roanoke"). For the reasons stated below, the Court grants the motion.

## BACKGROUND

Plaintiffs and Defendants entered into an Asset Purchase Agreement ("APA") on

January 30, 2006.[1]  The APA contains an indemnity provision, which provides in part:

> Sellers and the Shareholders, jointly and severally, shall indemnify, defend
> and hold harmless Buyer's Indemnified Persons, and each of them, from
> and against any Losses incurred or suffered by Buyer's Indemnified
> Persons, directly or indirectly, as a result of, relating to or arising from:
>
> > (i)     any breach of a representation or warranty made by Sellers
> >          herein . . . [and]
> > . . .
> >
> > (iii)   the Stand N Seal Matter; . . .

(Aff. of Jason R. Asmus ("Asmus Aff.") ¶ 3, Ex. 1 at § 12.1(a).)  In addition, the APA

prohibits any party from assigning its rights and obligations under the APA without prior

written consent of the other parties.  (*Id.* ¶ 3, Ex. 1 at § 14.7.)

This lawsuit involves a dispute regarding Defendants' contractual obligations

under the APA and indemnification obligations under the APA and the Side Letter

Agreement.  On January 10, 2008, Plaintiffs brought this action in Ramsey County

District Court, seeking a declaratory judgment regarding Defendants' indemnification

obligations and damages for Defendants' alleged breaches of the APA.  (Asmus Aff. ¶ 4,

Ex. 2.)  Defendants filed a Notice of Removal under 28 U.S.C. §§ 1441 and 1446,

alleging subject matter jurisdiction under the federal diversity statute, 28 U.S.C. § 1332.

Plaintiffs now move to remand the action to state court, arguing that Defendants' removal

was improper because complete diversity does not exist.

---

[1]     The parties also entered into a Side Letter Agreement and an Escrow Agreement,
both dated March 17, 2006.

## DISCUSSION

### I.      Standard of Review

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending."  If jurisdiction is based on diversity, the action can only be removed if complete diversity exists.  28 U.S.C. § 1332; 28 U.S.C. § 1441(b).

Pursuant to 28 U.S.C. § 1447(c), a party opposing removal may bring a motion requesting that the federal court remand the case back to state court.  The district court shall remand the case back to state court if it determines that the court lacks subject matter jurisdiction.  28 U.S.C. § 1447(c); *Martin v. Franklin Capital Corp.*, 126 S. Ct. 704, 707 (2005).  On a motion to remand, the party seeking removal and opposing remand bears the burden of demonstrating federal jurisdiction.  *In re Bus. Men's Assur. Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993).  The Court should resolve any doubt as to the propriety of removal in favor of remand.  *Id.*

### II.     Diversity of the Parties

In their notice of removal, Defendants allege that this Court has jurisdiction based on the diversity of the parties' citizenship.  Diversity jurisdiction exists when each defendant is a citizen of a different State from each plaintiff.  *Owen Equip. & Erection Co. v. Kroger*, 98 S. Ct. 2396, 2402 (1978); *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir.

1990).  When a case has been removed from state court, diversity must exist both at the time that the suit was commenced and when the petition for removal was filed.  *Minn. Mining and Mfg. Co. v. Kirkevold*, 87 F.R.D. 317, 320 (D. Minn. 1980).

Plaintiffs have submitted evidence that Roanoke's principal place of business is Aurora, Illinois.  (Asmus Aff. ¶ 3, Ex. 2.)  Therefore, Roanoke is an Illinois citizen for diversity of citizenship purposes.  28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.").[2]  Plaintiffs argue that complete diversity did not exist because both defendants CBRTT, Inc. ("CBRTT") and Richard F. Tripodi ("Tripodi") were also Illinois citizens at the time the lawsuit was commenced and/or removed.

## A.   CBRTT

CBRTT is an Illinois corporation.  (Asmus Aff. ¶ 5, Ex. 2.)  As such, it is an Illinois citizen for purposes of diversity jurisdiction.  Defendants do not dispute this.  Instead, Defendants contend that CBRTT's Illinois citizenship should not be considered because CBRTT is "an inactive corporation and a nominal party."  (Defs.' Mem. of Law in Opp. to Plfs.' Mtn. to Remand ("Defs.' Opp. Mem.") at 7.)  Defendants argue that CBRTT is dispensable for purposes of diversity jurisdiction.

Defendants claim that CBRTT terminated its business activities and assigned all assets to defendant BRTT, Inc. ("BRTT") on March 17, 2006, before this lawsuit was filed.  To substantiate this claim, Defendants rely on a Certificate of Corporate Secretary

---

[2]     Defendants do not dispute that Roanoke is an Illinois citizen.

("Certificate") that purports to show CBRTT's transfer of assets to BRTT on March 17, 2006.  (Affidavit of Thomas K. Jones ("Jones Aff.") ¶ 6, Ex. 2.)  The Court, however, has concerns about the validity of the Certificate.  The Certificate, which appears to have been prepared by a lawyer at the law firm of Payne & Jones, contains an identification number that, when compared with two other documents prepared by the same law firm, casts serious doubt on its purported date of creation.  It appears as though the Certificate was created after this suit was commenced in 2008.[3]  Although the Court makes no ultimate determination with respect to the Certificate's validity, it declines to rely on the Certificate in determining whether diversity jurisdiction exists.  On the record before it, the Court finds that CBRTT was a valid, existing Illinois corporation at the time that this lawsuit was commenced and removed.[4]

Defendants also rely heavily on *Stonybrook Tenants Assoc., Inc. v. Alpert*, 194 F. Supp. 552 (D. Conn. 1961), in support of its argument that CBRTT is dispensable for purposes of diversity.  In *Stonybrook*, the plaintiffs brought an action against multiple defendants to "enforce a written agreement entered into on August 17, 1959."  *Id*.  at 554.  The defendants removed the case to federal court.  *Id*. at 555.  The plaintiffs filed a motion to remand, claiming that two corporate defendants were not diverse.  *Id*. at 556.  The Court denied the plaintiffs' motion, holding that the defendant corporations were

---

[3]     CBRTT did not formally file dissolution papers with the Illinois Secretary of State until February 8, 2008.

[4]     Defendants also argue that CBRTT's purported assignment of its assets to BRTT would constitute a breach of the agreement and would therefore be invalid as a matter of law.  In light of the Court's findings above, it need not address this argument.

dispensable and nominal parties and therefore did not destroy diversity. *Id*. at 560. The facts of *Stonybrook*, however, differ significantly with the facts of the present case.

The agreement at issue in *Stonybrook* settled litigation regarding a housing development called Stonybrook Gardens. *Id*. at 554. Neither of the two corporate defendants, who were deemed to be nominal parties, had any interest in Stonybrook Gardens at the time of the 1959 agreement or at any time after. *Id*. at 558.[5] The Court reasoned:

> Since neither of the corporate defendants had any interest in Stonybrook Gardens at the time the agreement was executed nor at any subsequent time, they have no interest in the claims asserted in this action which is essentially one to enforce the agreement of August 17, 1959.

*Id*. Here, however, CBRTT is a party to and has obligations under the APA, Escrow Agreement and Side Letter Agreement. In particular, CBRTT is a party to the APA and is jointly and severally liable for any indemnification obligations owed to Plaintiffs. Thus, CBRTT is directly related to, and has an interest in, the subject matter of this lawsuit. Unlike the defendants in *Stonybrook*, it cannot be said that CBRTT is dispensable or should be disregarded for purposes of determining diversity jurisdiction.

For the above reasons, the Court finds that Defendants have failed to meet their burden of demonstrating federal jurisdiction over this action. CBRTT is an Illinois citizen. Defendants have offered no support for their argument that CBRTT should be

---

[5] The 1959 agreement preserved a disclaimer by both corporate defendants of any interest in the Stonybrook Gardens property. *Id*. at 558. The corporate defendants were included in the 1959 agreement because they were required to execute certain releases and, having done so, had performed all duties under the agreement. *Id*.

disregarded in the jurisdictional analysis.  Accordingly, CBRTT destroys diversity and the Court lacks jurisdiction over this action.

### B.    Tripodi

Plaintiffs also argue that defendant Tripodi was an Illinois citizen at the time he was served with the Summons and Complaint on January 10, 2008.  Defendants argue that Tripodi was an Arkansas citizen at the time this lawsuit was commenced.

An individual is a citizen of the state in which he or she is domiciled.  *Kirkevold*, 87 F.R.D. at 320.  A person's domicile is determined by the physical presence of the person in the place of claimed domicile and the intention of making it his or her present home.  *Id*.  "[T]here is a presumption in favor of an original or former domicile as opposed to an acquired one."  *Coggins v. R.R.M. Carpenter*, 468 F. Supp. 270 (E.D. Pa. 1979). [6]  Once an individual establishes his domicile, he remains domiciled there until he legally acquires a new domicile.  *Yeldell*, 913 F.2d at 537.  There is no dispute that Tripodi was domiciled in Illinois prior to moving to Arkansas sometime in 2008.  Thus, Tripodi will be deemed to be domiciled in Illinois unless he legally acquired a new domicile in Arkansas as of January 10, 2008.

On January 10, 2008, Tripodi was served at his home in Illinois.  Defendants argue that Tripodi had already changed his domicile to Arkansas as of that date.  The record establishes that Tripodi had purchased property and was building a house in

---

[6]    This places a heavier burden on a party who is trying to demonstrate a change in domicile than on one who is trying to demonstrate the retention of an existing domicile.  C. Wright, A. Miller & E. Cooper § 3612 at 535.

Arkansas before being served.  As to his presence in Illinois, Tripodi submitted an affidavit asserting the following:

> On the day I was served with the Complaint in this case, I was physically present in the state of Illinois in order to complete the sale of my home and finish moving my belongings to Arkansas.  Although I was in the state of Illinois on this date, I had already started residing in the state of Arkansas and intended to make Arkansas my permanent home.

(Aff. of Richard F. Tripodi ("Tripodi Aff.") ¶ 7.)  In addition, Defendants submit several documents purporting to establish that Tripodi was domiciled in Arkansas as of January 10, 2008.  These documents include:  (1) vehicle registrations issued on August 7, 2007, and January 30, 2008; (2) a copy of Tripodi's Arkansas driver's license, issued on January 30, 2008; (3) a December 18, 2007 estimate from a moving company that notes an Arkansas destination and a "load date" of January 10, 2008; (4) a January 1, 2008, cable agreement with an installation date of January 23, 2008; (5) an invoice billed to Tripodi in Arkansas, dated February 1, 2008; and (6) an Arkansas Voter Registration Application, dated February 25, 2008.

Although Tripodi asserts that he had "already started residing in the state of Arkansas" as of January 10, 2008, the record indicates that Tripodi still owned his Illinois residence as of January 10, 2008, and was physically present in that residence when served.  Defendants themselves stated that Tripodi was "in the process of joining his wife and her niece in Arkansas" as of January 10, 2008.  (Defs.' Opp. Mem. at 6.)  In addition, many of the documents relied upon by Defendants are dated or relate to services provided *after* January 10, 2008.  Therefore, these documents do not support Defendants' contention that Tripodi had changed domicile prior to the commencement of this lawsuit.

In particular, the Arkansas Voter Registration Application relied upon by Defendants is not dated until February 25, 2008, and indicates that Tripodi was previously registered to vote in Illinois.  In addition, the estimate from the moving company contains a "load date" of January 10, 2008.  These documents suggest that Tripodi did not change domicile until sometime after January 10, 2008.  Finally, the Court notes that Defendants have not submitted evidence of where Tripodi maintained his bank accounts or to which state he paid taxes in 2008.  Such evidence would also be relevant to his place of domicile.

On the record before the Court, it is evident that Tripodi changed his domicile to Arkansas at some point in early 2008.  However, the Court concludes that Defendants have not met their burden to show that this change in domicile occurred prior to January 10, 2008.  Thus, the Court presumes that Tripodi was an Illinois resident as of January 10, 2008.  Federal diversity jurisdiction, therefore, does not exist.

Because federal diversity jurisdiction does not exist, the Court grants Plaintiffs' motion to remand the case to state court.

**III.    Attorney Fees and Costs**

Plaintiffs request an award of attorney fees and costs incurred bringing the present motion to remand.  The Court can award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  The standard for determining whether to award fees under § 1447(c) turns on the reasonableness of the removal.  *Martin*, 126 S. Ct. at 711.  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively

reasonable basis for seeking removal." *Id.*  The district courts retain discretion when deciding whether to award fees under § 1447(c).  *Id.*

Here, Defendants lacked a reasonable basis for arguing that CBRTT should be disregarded in the Court's jurisdictional analysis.  Taking into account CBRTT's undisputed Illinois citizenship, diversity jurisdiction clearly did not exist and removal was improper.  Therefore, the Court holds that Plaintiffs are entitled to reasonable attorney fees and costs associated with bringing the Motion to Remand.

## CONCLUSION

Accordingly, based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1.      Plaintiffs' Motion to Remand to State Court (Doc. No. 9) is **GRANTED**.

2.      Plaintiffs' request for attorney fees and costs is **GRANTED**.

        a.      Absent stipulation of the parties with respect to the issue of attorney fees and costs, Plaintiffs shall submit an affidavit to the Court with a memorandum, not exceeding five pages, setting forth the request for attorney fees and costs within ten days of the date of this Order. Defendants will then have five days to submit a responsive memorandum, not exceeding five pages.  The Court will reserve the right to proceed with or without oral argument at that time.

Dated:  April 29, 2008                          s/Donovan W. Frank
                                                DONOVAN W. FRANK
                                                Judge of United States District Court